243 S.W.3d 211 (2007)
In the Interest of C.A.M.M.
No. 14-06-00279-CV.
Court of Appeals of Texas, Houston (14th Dist.).
October 30, 2007.
Rehearing Overruled January 24, 2008.
*213 Beverly Lord, Houston, for appellant.
Walter P. Mahoney, Jr., Pasadena, for appellee.
Panel consists of Justices FROST, SEYMORE, and GUZMAN.

MAJORITY OPINION
EVA M. GUZMAN, Justice.
In this custody dispute, the child's biological father challenges a modification order in which (1) the child's maternal grandmother and step-grandfather were appointed joint managing conservators with the exclusive right to determine the child's primary residence, and (2) although the father was named a joint managing conservator, he was limited to supervised visitation with the child. Because we agree that the trial court erred in ordering supervised visitation, we modify the trial court's order to remove this requirement. But because the parental presumption is inapplicable in a modification proceeding and the trial court properly considered the child's best interest in modifying conservatorship, we affirm the trial court's order as modified.

I. FACTUAL AND PROCEDURAL BACKGROUND
C.A.M.M. ("Camille")[1] was born in 1993. Tammy and Mark, her parents, were never married, but in 1994, Tammy filed an Original Petition to Establish Paternity. On November 8, 1996, the trial court entered an "Order on Motion to Modify in Suit Affecting the Parent-Child Relationship." The parties do not dispute that in this order (the "prior order"), the trial court appointed Tammy sole managing conservator with the right to designate Camille's primary residence and appointed Mark possessory conservator with a standard possession order.[2]
Tammy and Camille lived with Tammy's mother, Jean ("Grandmother"), and Tammy's step-father, also named Mark ("Grandfather," collectively, the "Grandparents"),[3] essentially from the time of Camille's birth. Mark has been involved in Camille's life since her birth and took an even more active parenting role after Tammy began to have serious health problems when Camille was about nine years old. Tammy died at home on February 17, 2005 while awaiting a heart transplant; Camille was home alone with Tammy when she died. Mark was immediately notified, and he took Camille home with him for a few days. Mark returned Camille to the Grandparents' home when Camille resumed school.
In March 2005, the Grandparents filed a Petition to Modify the Parent-Child Relationship, accompanied by Camille's signed statement that she preferred her grandparents to determine her primary residence.[4] The Grandparents later amended their petition, and their live pleading at the time of trial was entitled "First Amended Petition to Modify the Parent-Child Relationship and in the Alternative Petition in Suit Affecting the Parent-Child Relationship and in the Alternative Suit for Grandparent Access." The parties entered into an agreed interim order requiring Camille *214 to reside with the Grandparents, until June 1, 2005, and continuing Mark's standard possession on the first, third, and fifth weekends. The parties also agreed that Mark would have additional visitation on Tuesdays and Thursdays after school until the next morning so he could assist Camille with her schoolwork. The interim order granted Mark possession of Camille beginning June 1, 2005, and granted the Grandparents possession on the second and fourth weekends and every Wednesday overnight.
At the end of the school year, Camille began residing with Mark under the temporary order, but on July 25, 2005, the Grandparents sought to modify the agreed interim order. After a hearing before an associate judge, Mark and both Grandparents were appointed temporary joint managing conservators, and Camille returned to the Grandparents' residence. Mark was given a standard possession order, as well as additional visitation on Tuesdays and Thursdays from the end of Camille's school day until 8:00 p.m.
After conducting a non-jury trial and interviewing Camille in chambers, the trial court appointed Mark and the Grandparents joint managing conservators. The Grandparents were awarded the right to designate Camille's primary residence, and Mark was given visitation under a standard possession order and ordered to pay child support. In its conclusions of law, the trial court explicitly stated it was modifying the prior order of November 8, 1996.
Mark filed a motion for new trial on January 11, 2006, and argued inter alia that the trial court's rulings were not supported by a finding that he is an unfit parent. At the hearing on this motion, the trial court observed that it "would also not be able to give [Mark] a standard possession order" if he were unfit. The trial court then reformed its order, adding a finding that Mark's appointment as Camille's sole managing conservator would significantly impair her physical health and emotional development. The trial court also required Mark's visitation to be supervised by an adult approved by Grandmother. This appeal timely followed.

II. ISSUES PRESENTED
In four issues, Mark challenges the trial court's findings and reformed order, contending that the trial court (a) improperly categorized the lawsuit as a modification suit rather than an original proceeding, thus avoiding the parental presumption statute; (b) unconstitutionally applied the modification statutes; (c) abused its discretion by appointing the Grandparents as joint managing conservators rather than appointing Mark as the sole managing conservator; and (d) improperly reformed its order to limit Mark to supervised visitation.

III. ANALYSIS
A. Standard of Review
Most orders arising from a suit affecting the parent-child relationship will not be disturbed on appeal unless the complaining party can demonstrate a clear abuse of discretion. Worford v. Stamper, 801 S.W.2d 108, 109 (Tex.1990); In re D.S., 76 S.W.3d 512, 516 (Tex.App.-Houston [14th Dist.] 2002, no pet.). Such an abuse of discretion occurs when a trial court acts arbitrarily, unreasonably, or without regard to guiding rules or principles. McGuire v. McGuire, 4 S.W.3d 382, 384 (Tex.App.-Houston [1st Dist.] 1999, no pet.). A trial court does not abuse its discretion as long as some evidence of a substantive and probative character exists to support the trial court's decision. Huie v. DeShazo, 922 S.W.2d 920, 927-28 (Tex. 1996) (orig.proceeding). But the fact that *215 a trial court may decide a matter within its discretionary authority in a different manner from an appellate court in a similar circumstance does not demonstrate an abuse of discretion. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex.1985). Finally, the failure to analyze or apply the law correctly also constitutes an abuse of discretion. Walker v. Packer, 827 S.W.2d 833, 840 (Tex.1992) (orig.proceeding). This is so even when the area of law at issue is unsettled. Huie, 922 S.W.2d at 927-28.
B. Characterization of the Suit as a Modification
Pleading in the alternative, the Grandparents characterized their action as a suit for modification, an original proceeding, or a suit for access by a grandparent.[5] The trial court treated the proceeding as a modification, as demonstrated' by the court's order entitled "Reformed Order in Suit to Modify Parent-Child Relationship."[6] In his first issue, Mark contends that upon Tammy's death, the prior conservatorship order was no longer a valid order governing conservatorship and possession. He reasons that because the prior order became invalid, the trial court erred by treating this action as a suit for modification, rather than an original suit affecting the parent-child relationship ("SAPCR").
1. The Parental Presumption
The distinction between an original conservatorship determination and a modification proceeding is more than procedural or semantic. Under Chapter 153 of the Texas Family Code, the trial court is required to apply a "parental presumption" in an original proceeding:
[U]nless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development, a parent shall be appointed sole managing conservator[[7]] or both parents shall be appointed as joint managing conservators of the child.
TEX. FAM. CODE ANN. § 153.131(a) (Vernon 2002).[8] Thus, in an original proceeding, "evidence that the non-parent would be a better custodian" is insufficient to support the appointment of a non-parent as managing conservator in preference to a parent. See Lewelling v. Lewelling, 796 S.W.2d 164, 167 (Tex.1990). Rather, the non-parent is required to "affirmatively prove by a preponderance of the evidence that appointment of the parent as managing conservator would significantly impair the child, either physically or emotionally." Id.
But in a modification proceeding, a non-parent is not required to prove that *216 a parental appointment would significantly impair the child. In re V.L.K., 24 S.W.3d 338, 341 (Tex.2000). Instead, a non-parent who recently has lived with the child for six months can be appointed as a sole or joint managing conservator and obtain the right to designate the child's primary residence by demonstrating that the appointment would be in the child's best interest, and
(1) the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since the earlier of:
(A) the date of the rendition of the order; or
(B) the date of the signing of a mediated or collaborative law settlement agreement on which the order is based;
(2) the child is at least 12 years of age and has filed with the court, in writing, the name of the person who is the child's preference to have the exclusive right to designate the primary residence of the child; or
(3) the conservator who has the exclusive right to designate the primary residence of the child has voluntarily relinquished the primary care and possession of the child to another person for at least six months.
TEX. FAM. CODE ANN. § 156.101 (Vernon Supp.2006). Thus, in a suit for modification, the trial court does not presume that appointment of the surviving parent as sole managing conservator is in the child's best interest. See V.L.K., 24 S.W.3d at 341.
By including the parental presumption in original suits affecting the parent-child relationship but not in suits for modification of conservatorship, the Legislature balanced the rights of the parent and the best interest of the child. On one hand, "the interest of parents in the care, custody, and control of their children" has been described as "perhaps the oldest of the fundamental liberty interests" recognized by the United States Supreme Court. Troxel v. Granville, 530 U.S. 57, 65, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000) (plurality op.) (citing Meyer v. Nebraska, 262 U.S. 390, 399, 401, 262 U.S. 390, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923)). On the other hand, it is the public policy of this State to resolve conservatorship disputes in a manner that provides a safe, stable, and nonviolent environment for the child. TEX. FAM. CODE ANN. § 153.001(a)(2) (Vernon 2002) (emphasis added).
The Legislature has determined that when these two interests compete under conditions such as those presented here i.e., the sole managing conservator has died, and the child has expressed a preference that her primary residence be designated by the non-parents with whom she has spent almost her entire lifethe child's interest in stability prevails over the parent's right to primary possession. Cf. Bates v. Tesar, 81 S.W.3d 411, 421-22 (Tex.App.-El Paso 2002, no pet.) (noting that modification suits raise policy concerns like stability not present in original custody determinations). Thus, when statutory requirements are met, the parent's right to primary possession must yield to the child's right to a safe, stable home. See Warchol v. Warchol, 853 S.W.2d 165, 167 (Tex.App.-Beaumont 1993, no writ) (stating that, in determining a proposed modification of the terms of joint managing conservatorship, "[a]ny right of the parent must yield to that primary consideration [of the child's best interest]"); Reid v. Horton, 278 S.W.2d 626, 629-30 (Tex.Civ.App.-Amarillo 1954, writ ref'd n.r.e.) ("In any dispute as to the custody of a child, the prime considerations are the *217 welfare and best interests of the child and although the legal and natural claim of the parents to custody should never be disregarded as an influential factor . . . such right must yield where the child's welfare requires that its custody be given to others."); see also In re Tex. Dep't of Family & Protective Servs., 210 S.W.3d 609, 614 (Tex.2006) ("It is not the Court's task to choose between competing policies addressed by legislative drafting.").
We recognize that the ramifications of the modification statutes can be far-reaching and troubling, but any changes to the statutory scheme must come from the Legislature. TEX. CONST. art. II, § 1; see also City of San Antonio v. Hartman, 201 S.W.3d 667, 673 (Tex.2006). We thus analyze Mark's first issue under the statutory framework erected to balance these sometimes competing interests. See Hartman, 201 S.W.3d at 673 ("We must construe this statute according to what it says, not according to what we think it should have said.").
2. Application of the Statutory Framework
Here, the challenge to the characterization of this action as a suit for modification rather than an original proceeding is resolved by the plain language of the governing statutes. Pursuant to section 156.002 of the Family Code, a "person . . . who, at the time of filing, has standing to sue under Chapter 102 may file a suit for modification in the court with continuing, exclusive jurisdiction." TEX. FAM. CODE ANN. § 156.002(b).[9] If the child's managing conservator is deceased, a person has standing to sue under Chapter 102 if the child and the child's managing conservator resided with the person "for at least six months ending not more than 90 days preceding the date of the filing of the petition. . . ." Id. § 102.003(11) (Vernon Supp.2006). Thus, the Family Code encompasses modification of a prior order following the death of a sole managing conservator. Because the Grandparents conclusively established that Tammy and Camille lived with them as required by section 102.003(11), they not only had standing to pursue conservatorship through an original proceeding,[10] but also had standing to seek modification of the prior order:
To further its goal of providing stable home environments for Texas children, the Legislature specifically granted standing to file a modification suit following the death of a managing conservator to persons . . . with whom children and their managing conservator have resided for at least six months prior to the filing of the modification suit.
In re P.D.M., 117 S.W.3d 453, 464 (Tex. App.-Fort Worth 2003, pet. denied). Thus, in accordance with the Legislature's preference for stability when modifying prior conservatorship orders, the trial court's treatment of the proceeding as a suit for modification is sanctioned by provisions in the Family Code permitting a non-parent to sue for modification upon the death of *218 the managing conservator if the child and the conservator resided with the non-parent. And as previously discussed, the parental presumption does not apply in a suit for modification. See V.L.K., 24 S.W.3d at 343 (noting that "there is a difference between an original conservatorship determination and a modification" in that modification suits raise policy concerns such as a child's need for stability that may not be present in original conservatorship determinations).
Relying on Greene v. Schuble, Mark argues that the suit should have been treated as an original proceeding because the prior order did not survive the managing conservator's death. 654 S.W.2d 436, 438 (Tex.1983) (orig.proceeding). In Greene, the Texas Supreme Court held, "In the absence of specific provisions to the contrary in an order establishing conservatorship, the death of the managing conservator ends the conservatorship order and it no longer constitutes a valid, subsisting court order for purposes of [the prior habeas statute]." Id. at 437-38. The Greene Court went on to specify that "[t]he office of habeas corpus is limited to restoring possession of the child to the person legally entitled to present possession, and may not be used to relitigate custody." Id. at 438. But in Greene, a separate conservatorship proceeding was pending in the trial court; thus, the only issue before the Court was who, as between a natural parent and a step-parent, had the right to immediate possession of the children. Id. Moreover, the Court was careful to limit the application of its holding to the outcome of the habeas corpus proceeding, and expressly stated that the "opinion does not reflect consideration of the merits of the other proceedings pending in the court below." Thus, we cannot agree with Mark's argument that the trial court abused its discretion by failing to extend Greene's holding to a modification proceeding.
The Second Court of Appeals has considered and rejected a similar argument. P.D.M., 117 S.W.3d at 458-62. In rejecting the argument that the death of a managing conservator terminated a prior conservatorship determination, the court noted "the fact that a prior [conservatorship] order may no longer effectively govern the present right of possession to a child simply does not alter its status as a prior order or the reality of its prior existence, i.e., the effect it had on the subject children's lives." Id. at 462 (holding that a prior order appointing a managing conservator is a prior order for purposes of a suit to modify the parent-child relationship). We find no authority for a contrary result here.
We note that the prior order of November 8, 1996 order was an agreed order, and we emphasize that there is no indication in the record that Mark has ever been determined to be a less fit parent than Tammy. According to the parties, the parents agreed that Tammy would be appointed sole managing conservator and Mark would be the possessory conservator under a standard possession order. But because the trial court is authorized by statute to treat this action as a suit for modification to which the parental presumption does not apply, we cannot conclude that the trial court abused its discretion by doing so. We overrule Mark's first issue.
C. Alleged Unconstitutional Application of Modification Statutes
In his second issue, Mark asserts that the trial court unconstitutionally applied Chapter 156 of the Family Code, which governs modifications, instead of Chapter 153, which governs original proceedings. He argues that because the parental presumption does not apply to modifications, *219 he has been deprived of his due process rights. Although this issue appears to be an "as applied" constitutional challenge, his argument does not provide a basis upon which we may determine such an issue.
An analysis of a statute's constitutionality begins with a presumption of validity. In re Commitment of Fisher, 164 S.W.3d 637, 645 (Tex.2005). The burden is on the party attacking the statute to show that it is unconstitutional. See Walker v. Gutierrez, 111 S.W.3d 56, 66 (Tex.2003). Here, Mark does not explain how his fundamental due process rights were violated. He argues as follows:
[T]he trial court found that § 156 of the Texas Family Code applies rather than § 153. Appellant argues that the trial court abused its discretion by improperly applying the Texas modification statute resulting in a violation of father's due process rights. . . . [T]he court clearly took the position that there was no parental presumption and it would not be applied. . . . There is no indication that the court required Appellees to rebut the parental presumption . . . It appears that the court has set a lower standard of proof for a modification statute then [sic] required by Troxel[[11]]. . . . I submit that the modification statute deprives a parent of more rights than the grandparent access statute and therefore under In [r]e Mays-Hooper[[12]] the standard of proof should be clear and convincing evidence that parent [sic] is unfit, clear and convincing evidence that child's health or emotional well-being will suffer if trial court awards custody to father and denies relief to [Grandparents]. To determine otherwise deprives Appellant of his due process rights.
It is unclear whether Mark complains of the trial court's discretionary treatment of the case as a modification suit, the effect of the modification statutes, or the burden of proof; it is also unclear whether he attributes error to the trial court or the Legislature. We further note that Mark did not request appointment as Camille's sole managing conservatorship or the right to designate Camille's primary residence until after the trial court appointed all parties as joint managing conservators and granted the Grandparents the right to designate Camille's primary residence. See Quilloin v. Walcott, 434 U.S. 246, 255, 98 S.Ct. 549, *220 555, 54 L.Ed.2d 511 (1978) (holding that the due process rights of an unwed father who never had or sought actual or legal custody of his child were not violated in allowing child to remain with the family with whom it already resided). And the trial court may not grant relief in the absence of pleadings supporting such relief. Vaughn v. Drennon, 202 S.W.3d 308, 314 (Tex.App.-Tyler 2006, no pet.); see also TEX. R. CIV. P. 301 ("The judgment of the court shall conform to the pleadings. . . . ").
Although it is conceivable, as the concurrence intimates, that the modification statutes may not always adequately protect parental rights in every case,[13] Mark has not met his burden to establish that his own constitutional rights have been violated. Thus, we overrule his second issue.
D. Trial Court's Failure to Appoint Mark Sole Managing Conservator
In his third issue, Mark contends the trial court abused its discretion by appointing the parties joint managing conservators rather than appointing him sole managing conservator. In this issue, he asserts several no-evidence points and challenges various of the trial court's factual findings.[14] As we have determined that the parental presumption does not apply in a modification proceeding, we reframe Mark's issue as one challenging the sufficiency of the evidence to meet the statutory requirements for modification.
1. Review of Sufficiency Challenges
In our review of these findings, we apply a hybrid abuse-of-discretion analysis to determine whether the trial court (1) had sufficient information on which to exercise its discretion, and (2) erred in its application of discretion. See Zeifman v. Michels, 212 S.W.3d 582, 587-88 (Tex.App.-Austin 2006, pet. denied); see also Sotelo v. Gonzales, 170 S.W.3d 783, 787 (Tex. App.-El Paso 2005, no pet.). Thus, legal and factual insufficiency are not independent grounds for reversal, but instead are *221 factors to be, considered in determining whether the trial court abused its discretion. Zeifman, 212 S.W.3d at 587; Sotelo, 170 S.W:3d at 787.
To determine if the evidence is legally sufficient, we review the entire record, considering evidence favorable to the finding if a reasonable factfinder could, and disregarding evidence contrary to the finding unless a reasonable factfinder could not. City of Keller v. Wilson, 168 S.W.3d 802, 828 (Tex.2005). The evidence is factually insufficient if the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. See Cain v. Bain, 709 S.W.2d 175, 176 (Tex.1986) (per curiam). But it is for the fact finder to determine the weight to be given to the testimony and to resolve any conflicts in the evidence. Sotelo, 170 S.W.3d at 787.
Finally, after assessing the sufficiency of the evidence, we determine whether, based on the elicited evidence, the trial court made a reasonable decision. See Zeifman, 212 S.W.3d at 588; Sotelo, 170 S.W.3d at 787. "In other words, we must conclude that the ruling was neither arbitrary nor unreasonable." Sotelo, 170 S.W.3d at 787.
2. Statutory Requirements for Modification
Here, the trial court did not err in modifying conservatorship if modification was in Camille's best interests and if there had been a material and substantial change in circumstances or Camille had filed a written statement naming the person whom she would prefer to designate her primary residence. See TEX. FAM. CODE ANN. § 156.101(1), (2). Mark does not challenge the trial court's finding that there had been a material and substantial change in circumstances since the prior order, and it is undisputed that Camille had indicated her preference in writing. Thus, we consider whether the Grandparents established that it was in Camille's best interest that they be appointed joint managing conservators with the exclusive right to determine Camille's primary residence.
3. The Best Interest of the Child
In determining the best interest of a child, a court may consider, inter alia: (1) her desires, (2) her emotional and physical needs now and in the future, (3) any emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking primary possession, (5) the programs available to assist these individuals to promote the child's best interest, (6) the plans for the child by those seeking primary possession, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex.1976).[15] In the specific context of modification of conservatorship, courts also consider (10) the child's need for stability; and (11) the need to prevent constant litigation regarding conservatorship of the child. In re V.L.K, 24 S.W.3d at 343; Long v. Long, 144 S.W.3d 64, 68 (Tex.App.-El Paso 2004, no pet.).
Turning to those factors that are present here, we begin our analysis by noting that Camille indicated in writing that she preferred to have the Grandparents designate her primary residence. She also testified that she preferred to remain with the Grandparents and that living with her *222 father would make her "uncomfortable." Grandmother testified that living with Mark would impair Camille's emotional development because Camille has not had an opportunity to grieve for her mother. Additionally, a school district counselor testified that Mark did not seem to understand that Camille needed time to grieve after her mother's death.
Considering evidence of the parental abilities of the parties and the programs available to assist them in promoting Camille's best interest, we note that the Grandparents completed parenting classes and grief counseling classes in their efforts to prepare for taking a more active role in Camille's life. Mark also completed grief counseling classes, but did not complete a court-ordered parenting class prior to trial. Regarding the parties' plans for Camille, Grandmother indicated that she was present in the mornings and took Camille to school, and Grandfather was present in the afternoons and brought Camille home from school. She also stated that she planned on enrolling Camille in dance lessons and encouraging her to take art classes.
In contrast, Mark stated that Camille would be required to ride the school bus because he started work early in the morning; he indicated that he would rely on his girlfriend to ensure that Camille was ready for school in the mornings, but he would be home when Camille returned from school. Mark admitted that his girlfriend owns the house where he lives, and he could be forced to leave on short notice if their relationship deteriorated. Grandmother also testified that Mark "has a history of moving residences." The trial court could have concluded that removing Camille from the home where she had lived for the past ten years would not be in her best interest because it would decrease the continuity and stability in her life at a time when she was already faced with the loss of her mother.
On this record, we cannot conclude that the trial court had insufficient evidence upon which to exercise its discretion or erred in its application of this discretion. To the contrary, the record supports the trial court's determination that the modification is in Camille's best interest. Accordingly, we overrule Mark's third issue.
E. Reformation of Judgment
In his fourth and final issue, Mark asserts that the trial court erred by reforming its order to require his visitation with Camille be supervised by a person approved by Camille's Grandmother. We agree.
The trial court must begin with a rebuttable presumption that the standard possession order is in the best interest of the child. See TEX. FAM. CODE ANN. § 153.252 (Vernon 2002).[16] And even when the presumption is rebutted, "[t]he terms of an order that . . . impose[] restrictions or limitations on a parent's right to possession of or access to a child may not exceed those that are required to protect the best interest of the child." Id. § 153.193.
In its original order, the trial court placed no such restriction on Mark's time with his daughter. But after the hearing on Mark's motion for new trialduring which no argument was made regarding visitationthe trial court reformed its order to require that Mark's visits be supervised by a person or entity approved by Grandmother. The only reference to Mark's possession of Camille occurred in *223 the following colloquy between the trial court and Mark's trial counsel, who was arguing in favor of Mark's appointment as sole managing conservator:
Mark's Counsel: . . . So far as the grandmother was concerned, even if you go under the Court's ruling [sic] that it was a material and substantial change in circumstance, I submit to you that under Troxel the Court would also have to find that [Mark] was not a fit parent or to sort of state it definitely.
The grandmother would have
Court: And I would also not be able to give him a standard possession order.

Mark's Counsel: Correct, your Honor.
(emphasis added). Thus, it appears the trial court acted under the mistaken impression that an order appointing non-parents as joint managing conservators must be supported by a finding that the child's physical health or emotional development would be impaired if the, parent were awarded sole managing conservatorship. But as discussed supra, such a finding is not required to modify a conservatorship order. And in any event, such a finding must be supported by sufficient evidence to overcome the statutory presumption in favor of a standard possession order.
On this record, and in light of the statutory presumption, we conclude that the trial court abused its discretion by ordering that Mark's visitation be supervised. We therefore sustain Mark's fourth issue. We reform the trial court's order to remove the requirement of supervised visitation.

IV. CONCLUSION
We have determined that the trial court did not abuse its discretion in appointing Mark and the Grandparents as Camille's joint managing conservators in this modification proceeding. Furthermore, Mark has not demonstrated that the application of the Texas modification statutes violates his due process rights. Thus, we overrule his first, second, and third issues. But we agree that the trial court erred in requiring that Mark's visitation with Camille be supervised. Accordingly, we sustain his fourth issue and modify the trial court's order to remove the supervised visitation requirement. We affirm the trial court's order as modified.
FROST, J. Concurring.
KEM THOMPSON FROST, Justice Concurring.
The United States Supreme Court has concluded in a line of cases that, under the Due Process Clause of the Fourteenth Amendment, parents have a fundamental right to make decisions concerning the care, custody, and control of their children.[1] The Texas Supreme Court likewise has held that "the natural right which exists between parents and their children *224 is one of constitutional dimensions."[2] It used to be that in a contest between a fit parent and non-parents, the fit parent would prevail. See State v. Deaton, 93 Tex. 243, 54 S.W. 901, 903 (Tex.1900). That is no longer the case. Under the Texas Family Code, a trial court is authorized to deprive a fit parent of the exclusive right to parent his own child and instead place fundamental parental rights in the hands of non-parents, to the exclusion of the fit parent. Though the result the court reaches today is correct under existing law, this case raises serious questions about the fundamental rights of fit parents to make decisions concerning the care, custody, and control of their own children.
Consistent with the constitutional rights of fit parents, the Texas Legislature, for the most part, gives fit parents priority over non-parents in matters relating to the parents' children. For example, except as to parents with a history of domestic violence, the Legislature, in the Texas Family Code, requires that the trial court appoint a parent as managing conservator in an original conservatorship suit, unless the court "finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development."[3] Though grandparents are given standing to file an original suit seeking to be appointed managing conservators of a child, they must show satisfactory proof that "the order requested is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development."[4] Likewise, though the trial court may grant a person deemed by the court to have had substantial past contact with the child leave to intervene in a pending suit filed by a person authorized to do so, there must be satisfactory proof that "appointment of a parent as a sole managing conservator or both parents as joint managing conservators would significantly impair the child's physical health or emotional development."[5] Similarly, the trial court is authorized to order reasonable possession of or access to a grandchild by a grandparent only if, among other things, the grandparent "overcomes the presumption that a parent acts in the best interest of the parent's child by proving by a preponderance of the evidence that denial of possession of or access to the child would significantly impair the child's physical health or emotional well-being."[6] This strong statutory preference favoring parents, known as the "parental presumption," is a powerful force in a conservatorship proceeding. Without it, a fit parent is on equal footing with non-parents vis-à-vis the conservatorship of the parent's children.
Although our lawmakers have adopted a general approach of giving fit parents priority over non-parents for matters relating to the parents' children, they have not done so in all cases. In cases such as the one now under review, our lawmakers have chosen to deprive fit parents of the parental presumption, effectively placing them on a par with non-parents in a contest over conservatorship of the parents' children.
*225 In this case, the petitioners (collectively "Non-Parents") filed an original suit seeking their appointment as primary managing conservators of Camille[7] rather than the child's fit parent ("Parent"). The Legislature explicitly allows non-parents to do so when they are people "with whom the child and the child's . . . managing conservator . . . or parent have resided for at least six months ending not more than 90 days preceding the date of the filing of the petition if the child's . . . managing conservator . . . or parent is deceased at the time of the filing of the petition."[8] This statutory regime makes sense in an original action, because the non-parents would have to overcome the strong parental presumption before they could be appointed managing conservators.[9] But, in a modification suit, a parent is not given the benefit of the parental presumptioneven in a contest with non-parents. Consequently, the trial court can modify a conservatorship order based only upon its determination that "modification would be in the best interest of the child and (1) the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed . . . [or] (2) the child is at least 12 years of age and has filed with the court, in writing, the name of the person who is the child's preference to have the exclusive right to designate the primary residence of the child."[10] In this case, the child filed with the court a document reflecting her preference that the Non-Parents have the exclusive right to designate her primary residence. Therefore, without applying the parental presumption and without determining that the child's only living parent is unfit, the trial court could appoint non-parents as managing conservators with the exclusive right to determine the child's residence based solely on a "best interests of the child" determination, an inquiry that traditionally did not even come into play where a fit parent was concerned. In this way, the Texas Family Code allows non-parents to usurp fundamental parental rights from a fit parent.
By allowing the appointment of non-parents as primary managing conservators instead of the only surviving parent, who has never been shown to be unfit, the Texas Legislature has permitted surviving parents' fundamental constitutional rightsrights "far more precious than any property right"[11]to be defeated without requiring the non-parents to overcome the parental presumption. Under the Texas Family Code, even parents whose fitness is unquestioned may be deprived of the exclusive right to rear their children following the death of the child's other parent. Trial courts are permitted to endow non-parents with the fundamental decision-making power over where the child will live and where the child will go to school. By allowing non-parents to assert a modification action in this context, the Legislature has sanctioned this result as long as the trial court finds that it is in the child's best interest and as long as the child states that she wants the non-parents to determine where she lives.
In 1995 our lawmakers enacted a statute providing that any person who has standing to file an original suit also has standing *226 to file a modification action.[12] Therefore, without explicitly listing them, the Legislature incorporated by reference the fourteen categories of people or entities who have standing to file original suits and stated that these parties also may file modification actions. Under the unambiguous language enacted by the Legislature in 1995, the Non-Parents could seek to modify the prior conservatorship order so that they could be appointed as primary conservators because they are people "with whom the child and the child's . . . managing conservator . . . or parent have resided for at least six months ending not more than 90 days preceding the date of the filing of the petition if the child's managing conservator . . . or parent is deceased at the time of the filing of the petition."[13]
Under this statutory language, a non-parent with whom a deceased parent has lived for six months can become the primary joint managing conservator in lieu of the surviving fit parent, based solely on the stated preference of a twelve-year-old child and a finding by the trial court that such an arrangement is in the child's best interest. Some have suggested that, in an as-applied context, the Texas Family Code violates the substantive due process rights of the fit parent.[14] However, the plurality in Troxel v. Granville expressly declined to define the scope of the parental substantive due process right to which it referred in the context of the grandparent-access statute at issue in that case.[15] Furthermore, prior to the trial court's original order on the petition to modify, the Parent did not request to be appointed primary or sole managing conservator, and he never asserted pleadings seeking this relief. Existing precedent from the United States Supreme Court suggests that in this context the Parent's substantive due process rights were sufficiently protected by the trial court's "best interests of the child" determination,[16] Research has not revealed any precedent from the United States Supreme Court, the Texas Supreme Court, or this court holding that substantive due process requires that the Parent be proved unfit or that the parental presumption be rebutted under the circumstances of this case. For these reasons, there is no merit in the Parent's as-applied challenge to the constitutionality of the relevant provisions of the Texas Family Code.
More than a century ago, in another contest between a fit parent and non-parents over a child, the Texas Supreme Court addressed the tension between the rights of a fit parent and the desire for stability for the child who had been living for an extended time with two non-parents.[17] *227 Our high court, reaching a result different than would be permitted under the current Texas Family Code, stated that, whatever the form of the proceeding, courts would interfere with parents' rights to custody of their minor children "with great caution, and with a deep sense of responsibility." State v. Deaton, 93 Tex. 243, 54 S.W. 901, 903 (Tex.1900). The Texas Supreme Court held that "in the absence of any positive disqualification of the [parent] for the proper discharge of his parental duties, he has, as it seems to us, a paramount right to the custody of his [child], which no court is at liberty to disregard." Id.
Under the former paradigm, fit parents were allowed to parent their own children. As long as the parent was not unfit, the courts did not interfere. A fit parent was presumed to act in his child's best interest, so if non-parents sought rights over the fit parent's child, there was no need for an analysis of the Holley factors.[18] Likewise, in a contest between a fit parent and non-parents, the desires of a twelve-year old would not be sufficient to overcome the "paramount right" of the fit parent to custody of the child. See id. Under our current statutory scheme, if the child of a fit parent would rather live with a non-parent, the trial court canand in this case didhonor the child's wishes. As a result, the Parent's child is living with the Non-Parents and they have been awarded the exclusive right to make important decisions in the child's life.
Clearly, this paradigm shift has adversely impacted the ability of fit parents to make decisions concerning the care, custody, and control of their own children. Under the unambiguous statutes, the Non-Parents were allowed to file a petition to modify, and the trial court had the statutory authority to appoint them as primary managing conservators and grant them rights to the exclusion of the Parent, without application of the parental presumption or evidence rebutting it, and without any showing that the child's only living parent was unfit. Whether or not our lawmakers actually envisioned such a result when they enacted the relevant statutes, this court must enforce the unambiguous statutory language as written.[19] For these reasons, I respectfully concur in the court's judgment.[20]
NOTES
[1] We refer to the parties by fictitious names to protect the identity of the minor child. TEX. FAM. CODE ANN. § 109.002(d) (Vernon 2002).
[2] The parties did not include, a copy of the prior order in the record on appeal.
[3] We will refer to Camille's step-grandfather as "Grandfather" for case of reference and to distinguish him from Camille's father of the same name.
[4] Camille was over twelve years old at the time.
[5] See TEX. FAM. CODE ANN. § 153.432 (Vernon Supp.2006) (governing suits for possession or access by a grandparent).
[6] In the order, the trial court found "that the material allegations in the petition to modify are true and that the requested modification is in the best interest of the child:" (emphasis added).
[7] Unless otherwise limited by court order, a parent who is the sole managing conservator has the exclusive right to designate the primary residence of the child. TEX. FAM. CODE ANN. § 153.132(1) (Vernon 2002). The rights to primary possession and to determine the child's primary residence are "core rights of managing conservatorship[.]" Phillips v. Beaber, 995 S.W.2d 655, 660 (Tex. 1999).
[8] This statute is subject to section 153.004, which concerns a parent's history of committing acts of domestic violence, child neglect, physical abuse, or sexual abuse. TEX. FAM. CODE ANN. § 153.004. No such history has been alleged here.
[9] The trial court maintained continuing exclusive jurisdiction after the mother's death. See Fleming v. Easton, 998 S.W.2d 252, 255 (Tex. App.-Dallas 1999, no pet.); Dohrn v. Delgado, 941 S.W.2d 244, 248 (Tex.App.-Corpus Christi 1996, no writ); Lewis v. McCoy, 747 S.W.2d 48, 50 (Tex.App.-El Paso 1988, no writ).
[10] See In re SSJ-J, 153 S.W.3d 132, 134-38 (Tex.App.-San Antonio 2004, no pet.) (discussing history of section 102.003(a)(11) and concluding that upon the death of the child's mother, who was a joint managing conservator with the right to establish the child's primary residence, the child's maternal grandmother and step-grandfather had standing to bring an original suit seeking conservatorship, but were required to overcome the parental presumption).
[11] In Troxel, a plurality of the United States Supreme Court stated that Washington's "breathtaking broad" nonparental visitation statute was unconstitutional as applied because the statute accorded no weight to the visitation decisions of fit custodial parents, and because the Washington court refused to construe the statute narrowly but instead presumed that grandparent visitation would be in a child's best interest. 530 U.S. at 67-72, 120 S.Ct. at 2060-63. The underlying lawsuit in Troxel was an original proceeding concerning visitation, not a modification suit concerning conservatorship. The plurality did not specify a burden of proof for modification statutes in that opinion.
[12] In re Mays-Hooper, 189 S.W.3d 777 (2006) (per curiam) (following Troxel in granting mandamus relief directing the trial court to vacate an order under section 153.432 of the Family Code, which governs grandparent visitation).

Although Mays-Hooper is inapposite, the Second Court of Appeals has applied Troxel's due process analysis to a conservatorship dispute between a parent and a non-parent and determined that the Texas modification statutes were not unconstitutional as applied. See In re M.N.G., 113 S.W.3d 27, 31-35 (Tex. App.-Fort Worth 2003, no pet.). After "[c]onsidering the Texas modification, statute in light of the policy considerations behind it, as well as the case law concerning the statutorily required elements," the court concluded that "the Texas statute is not too vague or overbroad to protect [the father's] constitutional due process rights." Id. at 35.
[13] See generally David F. Johnson, In re V.L.K. v. Troxel: Is the "Best Interest" Standard in a Motion to Modify the Sole Managing Conservator Subject to a Due Process or Due Course Challenge?, 34 ST. MARY'S L.J. 623, 638-39 (2003) (discussing the possibility that the modification statute could be unconstitutionally applied in certain circumstances). It is not our role, however, to "second-guess the policy choices that inform our statutes. . . ." McIntyre v. Ramirez, 109 S.W.3d 741, 748 (Tex.2003).
[14] Specifically, Mark asserts:

There is no evidence in the record that [he] is unfit to care for and raise his daughter. To the contrary[,] all the evidence showed that he had done so for twelve [] years and is capable of doing so now. Appellant objects to Findings of Fact nos. 4, 5, 6. . . .
* * *
None of the testimony is supportive of finding that [Mark] is in any way detrimental to his daughter's physical or emotional development or that her living with him would be detrimental to his daughter's physical or emotional development.
The challenged findings of fact are as follows:
4. It is the best interest of the child that [Grandmother], [Grandfather,] and [Mark] be appointed joint managing conservators of the child and that [Grandmother and Grandfather] have the right to designate the child's primary residence.
5. The child the subject of this suit is over the age of 12 years and has executed a choice preference as provided in section 153.008 of the Texas Family Code stating in writing her preference that the Petitioners have the right to establish the primary residence of the child. The Court finds the choice is consistent with the best interest of the child.
6. The Court also finds that the appointment of [Mark] as the joint managing conservator with the right to establish the primary residence of the child would significantly impair the child's physical health or emotional development. The court finds that determination is in the best interest of the child.
[15] Some of these factors are not at issue here. For example, neither party cites any acts or omissions of Mark that may indicate the existing parent-child relationship is improper; thus factors (8) and (9) are inapplicable.
[16] Although located in Chapter 153, the application of this statute is not limited to original proceedings, but governs parental possession generally. See, e.g., In re B.N.F., 120 S.W.3d 873, (Tex.App.-Fort Worth 2003, no pet.).
[1] See Troxel v. Granville, 530 U.S. 57, 65-66, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000) (plurality op.) (collecting cases and concluding that "it cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children"); Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972) (stating that "the rights to conceive and to raise one's children have been deemed `essential,' `basic civil rights of man,' and `rights far more precious than property rights'") (citations omitted); Prince v. Massachusetts, 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944) (stating that "it is cardinal with us that the custody, care, and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder").
[2] Southwestern Bell Telephone Co. v. Garza, 164 S.W.3d 607, 622 (Tex.2004).
[3] TEX. FAM. CODE ANN. § 153.131 (Vernon 2002).
[4] TEX. FAM. CODE ANN. § 102.004(a) (Vernon Supp.2006).
[5] TEX. FAM. CODE ANN. § 102.004(b) (Vernon Supp.2006).
[6] Tex. Fam.Code Ann. § 153.433 (Vernon Supp.2006).
[7] Camille is the fictitious name used by the majority for the Parent's child.
[8] TEX. FAM. CODE ANN. § 102.003(11) (Vernon Supp.2006).
[9] TEX. FAM. CODE ANN. § 153.131.
[10] TEX. FAM. CODE ANN. § 156.101. (Vernon Supp.2006); In re V.L.K., 24 S.W.3d 338, 342-43 (Tex.2000).
[11] Stanley, 405 U.S. at 651, 92 S.Ct. at 1212.
[12] See Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex. Gen. Laws 113, 172 (current version at TEX. FAM. CODE ANN: § 153.002).
[13] TEX. FAM. CODE ANN. §§ 102.003(11), 156.002(b).
[14] See, e.g., David F. Johnson, In re V.L.K. v. Troxel: Is the "Best Interest" Standard in a Motion to Modify the Sole Managing Conservator Subject to a Due Process or Due Course Challenge?, 34 ST. MARY'S L.J. 623, 639-49 (2003).
[15] See Troxel, 530 U.S. at 73, 120 S.Ct. at 2064.
[16] See Quilloin v. Walcott, 434 U.S. 246, 252-56, 98 S.Ct. 549, 553-55, 54 L.Ed.2d 511 (1978) (holding that due process rights of father were sufficiently protected by trial court's "best interest of the child" determination, even though there was no showing that he was an "unfit parent," where he did not seek to legitimatize the child for the first eleven years of the child's life and where father had a relationship with the child but had never had custody of the child).
[17] The child of the fit parent had resided in the home of non-parents for four years (from the time the child was two years old until trial, when the child was six years old).
[18] See Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex.1976) (listing a range of factors that courts consider in determining the best interest of the child, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the Parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent, which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent).
[19] See Lee v. City of Houston, 807 S.W.2d 290, 293 (Tex.1991).
[20] The court correctly modifies the trial court's order because of the trial court's error in issuing a supervised possession order rather than a standard possession order as to the Parent.