**Reversed and Remand and Memorandum Opinion filed August 22, 2019.**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

## NO. 14-18-00464-CV

## IN THE INTEREST OF K.C.L. AND M.W.L., CHILDREN

**On Appeal from County Court at Law No. 2
Galveston County, Texas
Trial Court Cause No. 16-FD-2240**

## MEMORANDUM  OPINION

In this suit affecting the parent-child relationship ("SAPCR"), the trial court conducted a bench trial and signed an order appointing Rebekah[1] (Mother) and Nestor (biological father of Barry and non-biological father of Lorenzo) joint managing conservators of Nestor.  The court also signed an order regarding

---

[1] To protect the privacy of the complainants in this case and for ease of reference, we identify individuals by pseudonyms.  REE (mother) is identified as "Rebekah."  CNL (biological father of MWL and non-biological father of KCL) is identified as "Nestor."  MWL (older child of mother and CNL) is identified as "Barry."  KCL (mother's youngest son) is identified as "Lorenzo."  AR (mother's boyfriend in Arkansas) is identified as "Jerry."  AL (CNL's wife) is identified as "Olga."

possession of Lorenzo, granting Rebekah sole right of possession and access of Lorenzo, and ordering that Nestor has no right to possession or access to Lorenzo.

In two issues on appeal,[2] Nestor maintains the trial court abused its discretion by: (1) ordering that Nestor had no right to possession or access to Lorenzo because he was not Lorenzo's biological father, which Nestor claims "involuntarily terminated appellant's parent-child relationship without clear and convincing evidence that appellant had violated Sec. 161.001(B)(1)(A)-(T) and thus violate (sic) constitutional right to the companionship, care, custody, and management of [Lorenzo],"[3] and (2) ordering DNA testing when Nestor was Lorenzo's presumed father and the four-year statute of limitations had passed. We reverse and remand.

## I. Background

Nestor married Olga in May 2006. In March 2008, Nestor and Rebekah began a relationship. At that time, Nestor and his wife Olga were separated. Nestor and Rebekah began living together, and shortly thereafter, Rebekah became pregnant with Nestor's child, Barry. Barry was born in January 2009. Rebekah, Nestor, and Barry lived together until around June 2009. In June 2009, Rebekah and Nestor had a fight, causing injuries to Rebekah resulting in treatment at a hospital. Child Protective Services was contacted and Barry, who was approximately seven months old, spent a week in foster care and, thereafter, temporary custody of Barry was awarded to grandmother (Nestor's mother).

---

[2] Nestor does not challenge the trial court's order as it relates to his biological child, Barry.

[3] Section 161.001 of the Texas Family Code is titled "Involuntary Termination of Parent-Child Relationship." Under subsection (b), the statute provides that a court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that the parent has committed an infraction listed in subsections (A) – (T).

In October 2009, Nestor and Olga reconciled, and Nestor moved back in with Olga. Barry began living with Nestor and Olga.

In January 2010, Nestor bought Rebekah a one-way ticket to Oregon to visit her father. After spending four months in Oregon, Rebekah's high school boyfriend, Jerry, bought her a ticket to Arkansas. Rebekah remained with Jerry in Arkansas for two-and-a-half to three months. Rebekah and Jerry had sexual relations.[4]

In late July 2010, Nestor separated from Olga, who was pregnant with Nestor's baby. Nestor contacted Rebekah. In late July, Rebekah returned to Texas and Nestor picked her up at the bus stop. Nestor and Rebekah began living together and having sexual relations. Rebekah found out in late August 2010 that she was pregnant.

Nestor reconciled with Olga. On September 6, 2010, Rebekah moved in with Nestor and Olga. Olga gave birth to Nestor's baby mid-September 2010. Rebekah helped Olga with her baby, cooked, cleaned, ran errands for everyone, and performed other chores. In the latter part of March 2011, Rebekah gave birth to Lorenzo while living with Nestor and his wife, Olga. Rebekah lived continuously with Nestor and Olga and with all of the children until July 4, 2016.

On July 4, 2016, Rebekah moved out, claiming she could no longer take the physical and verbal abuse from Nestor. Although Rebekah attempted to take Lorenzo with her, Nestor refused to let her leave with Lorenzo. Barry and Lorenzo remained with Nestor and Olga.

---

[4] At trial, Rebekah testified on direct examination that Jerry is the father of Lorenzo.

On August 1, 2016, Rebekah filed this suit on behalf of Barry against Nestor, seeking joint managing conservatorship of Barry.[5] On September 2, 2016, Nestor filed an original counter-petition in suit affecting the parent-child relationship, requesting to be appointed sole managing conservator of Barry.

On September 7, 2016, a temporary orders hearing was held before an associate judge, and Rebekah and Nestor agreed that the two boys (Barry and Lorenzo) would stay with Nestor and Olga and Rebekah would have possession of the boys every other weekend. The parties also agreed to mediate within sixty days of the hearing and mandated drug screening. The presiding judge adopted the report of the associate judge.

On April 4, 2017, after attending mediation, the parties filed a partial mediated settlement agreement in the SAPCR suit involving Barry. As part of the mediation agreement, the parties agreed to recess mediation to allow DNA testing of Lorenzo and Nestor. The parties agreed to a continuance of the court case until July 2017, pending the results of the DNA test. The parties' agreed motion for continuance of trial was signed on May 30, 2017. Trial was reset for August 28, 2017.

The DNA results demonstrated that Nestor was not a potential father of Lorenzo.[6]

On August 24, 2017, Nestor filed a "First Amended Counterpetition in Suit Affecting the Parent-child Relationship and to Adjudicate Paternity," as to Barry

---

[5] Rebekah filed a separate suit affecting parent child relationship on behalf of Lorenzo against Jerry, styled *In the Interest of KCL, a Child*, Cause No. 16-FD-2242, in the County Court No. 2, Galveston, Texas. This case was dismissed for want of prosecution on September 6, 2017.

[6] Nestor objected to the DNA results, arguing that the test was not conducted according to the statute and Rebekah would not be able to lay a proper predicate for admission of the DNA results.

and Lorenzo. Nestor sought to be named as sole managing conservator of both children.

The trial was continued and reset for several reasons, including the effects of Hurricane Harvey on parties and their counsel.

On September 29, 2017, Jerry filed in this case a copy of Jerry's Alleged Father's Affidavit for Voluntary Relinquishment of Parental Rights of [Lorenzo]," a document originally filed in the SAPCR suit between Rebekah and Jerry.

On October 9, 2017, Rebekah filed a first amended petition, alleging Nestor is not the biological, legal, or presumed father of Lorenzo. She asserted that Nestor was excluded by DNA Test report interpretation as, "probability of Paternity of 0%." Rebekah requested the trial court appoint her and Nestor joint managing conservators of Barry. Rebekah also requested to be named sole managing conservator of Lorenzo.

On November 2, 2017, Nestor filed a "Second Amended Counterpetition in Suit Affecting the Parent-child Relationship and to Adjudicate Paternity," requesting adjudication of paternity of Barry and Lorenzo as well as: appointment as sole managing conservator or, in the alternative joint managing conservator of both boys; access pursuant to a standard possession order by way of a stair-stepped visitation plan tied to Rebekah providing clean drug and alcohol screening results; and execution of a court ordered bond or security deposit by Rebekah.

After several continuances, the trial court held a bench trial on November 13, 14, and 15, 2017. Immediately prior to trial commencing, Nestor objected to the admission of DNA testing conducted prior to trial, claiming it was not conducted in accordance with statutory guidelines and that Rebekah would not be

5

able to lay the proper predicate for admission of the testing. The trial court declared the objection to be a legal issue and deferred ruling on the issue.

Rebekah testified she wanted both boys home with her. Rebekah acknowledged that Nestor was the father of Barry; however, she disavowed that Nestor was the father of Lorenzo. Nestor reiterated Rebekah's testimony that Rebekah lived with Nestor and Olga from September 2010 until July 2016. Nestor also testified Lorenzo lived with him for over six years, and that Nestor held Lorenzo out as his own son. Rebekah and Nestor each called witnesses to testify. On the last day of trial, November 15, 2017, after hearing argument from counsel, the trial court ordered a second round of DNA testing.

The parties complied with the trial court's order, submitting to DNA testing to determine whether Nestor is the biological father of Lorenzo. The DNA test results stated Nestor was "excluded as the biological father of [Lorenzo]." "The probability of paternity is 0%."

On January 31, 2018, the court sent counsel a letter advising that the court had completed trial of the matter and had reviewed the evidence, arguments of counsel, and the law, and was of the opinion that final orders should be prepared by Rebekah's counsel and should include: Nestor is the father of Barry; Nestor is not the father of Lorenzo; the parties are joint managing conservators as to Barry, with Nestor having primary custody and control and exclusive right to determine residence of Barry.

In an order dated February 5, 2018, the trial court noted that "[o]n January 31, 2018, the Court issued its decision in this matter . . that [Nestor] is <u>not</u> the father of [Lorenzo]. It has come to the Court's attention that the parties are unable to amicably agree to a transition of possession of the child." The trial court ordered

6

that Rebekah was entitled to immediate possession of Lorenzo and that Nestor has no right to possession or access to Lorenzo.

On February 26, 2018, Nestor requested findings of fact and conclusion of law relating to Lorenzo, on the underlying paternity issues, possession and access, termination of parental rights, and legal sufficiency, but none were filed. The record does not reflect that Nestor filed a notice of past-due findings of fact.[7]

On March 6, 2018, the trial court conducted an entry hearing and set the final entry order for March 12, 2018. On March 12, 2018, the trial court signed a final order in suit affecting the parent-child relationship. The trial court ordered that Nestor is adjudicated the father of Barry; Nestor is not the father of Lorenzo; Nestor has no right to possession or access to Lorenzo; and Rebekah has immediate possession of Lorenzo. The trial court further ordered Rebekah and Nestor joint managing conservators of Barry with a standard possession order, and further ordered Nestor to have the exclusive right to designate the primary residence of Barry

On March 23, 2018, Nestor filed a motion for new trial, which the trial court denied.

On April 12, 2018, Nestor also filed a motion for partial modification, correction or reformation of judgment, which was denied. In the motion, Nestor maintained that he and Jerry filed an acknowledgment of paternity and a denial of paternity, respectively, and filed these papers with the "proper government

---

[7] The rules provide that if the trial court fails to timely issue findings of fact and conclusions of law as requested, "the party making the request shall, within thirty days after filing the original request, file with the clerk and serve on all other parties in accordance with Rule 21a a 'Notice of Past Due Findings of Fact and Conclusions of Law.' " Tex. R. Civ. P. 297; *see Las Vegas Pecan & Cattle Co. v. Zavala Cty.*, 682 S.W.2d 254, 255–56 (Tex. 1984) (holding that an appellate complaint regarding the trial court's failure to file findings of fact and conclusions of law was waived where the "past due" notice was filed four days late).

agency."[8] Nestor further complained that Rebekah did not seek an adjudication of paternity; instead, she sought sole managing conservatorship of Lorenzo. Nestor maintains that this "act effectively adjudicated [Nestor] the father of [Lorenzo].. . ." Nestor also argued that the trial court abused its discretion by failing to issue an order that conforms to the pleading, in that Nestor's parental rights were terminated when no termination was sought.

Nestor timely filed this notice of appeal.[9]

## II. Analysis

### A. Standard of review

Most orders arising from a suit affecting the parent-child relationship will not be disturbed on appeal unless the complaining party can demonstrate a clear abuse of discretion. *In re C.A.M.M.*, 243 S.W.3d 211, 214 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (citing *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990)); *see also In the Interest of K.S.*, 492 S.W.3d 419, 426 (Tex. App.– Houston [14th Dist.] 2016, pet. denied) (trial courts have wide discretion with respect to custody, control, possession, support, and visitation matters). Such an abuse of discretion occurs when a trial court acts arbitrarily, unreasonably, or without regard to guiding rules or principles. *In re C.A.M.M.*, 243 S.W.3d at 214. The fact that a trial court may decide a matter within its discretionary authority in a different manner from an appellate court in a similar circumstance does not demonstrate an abuse of discretion. *Id.* at 214–15. A trial court does not abuse its

---

[8] Pursuant to Tex. Fam. Code § 160.305, proper filing must be made with the Bureau of Vital Statistics. Proof of a whether a valid acknowledgment of paternity was filed with the Bureau of Vital Statistics is not in the record before this court.

[9] Rebekah has not filed an appellee's brief in defense of the trial court's order, and we must, therefore, "accept as true the facts stated" in Nestor's brief to the extent it is supported by record references. *See* Tex. R. App. P. 38.1(g).

discretion as long as some evidence of a substantive and probative character exists to support the trial court's decision. *Id*. at 215.

## B.     Presumption of paternity

In his second issue, Nestor contends the trial court abused its discretion ordering DNA testing because Rebekah is barred by limitations from challenging paternity of Lorenzo, arguing Lorenzo is a child with a presumed father.

### 1.     Legal authorities

A presumption of paternity exists if "during the first two years of the child's life," the man "continuously reside[s] in the household in which the child reside[s] and he represent[s] to others that the child [is] his own." Tex. Fam. Code § 160.204(a)(5).  This presumption legally establishes the father-child relationship between the man and the child.  Tex. Fam. Code § 160.201(b)(1).  A "presumed father" is, by operation of law under section 160.204, "recognized as the father of the child until that status is rebutted or confirmed in a judicial proceeding."  Tex. Fam. Code § 160.102(13); *In re S.C.L.*, 175 S.W.3d 555, 557 (Tex. App.—Dallas 2005, no pet.).  This presumption may be rebutted only by (1) a proceeding to adjudicate parentage under Subchapter G, or (2) the filing of a valid denial of paternity by the presumed father in conjunction with the filing by another person of a valid acknowledgment of paternity.  Tex. Fam. Code § 160.204(b); *In re S.C.L.*, 175 S.W.3d at 557.  When a child has a presumed father, the general rule is that a proceeding to adjudicate parentage must be commenced "not later than the fourth anniversary of the date of the birth of the child."  Tex. Fam. Code § 160.607(a). However, a proceeding seeking to disprove the father-child relationship between a child and a child's presumed father may be maintained at any time if the trial court determines that:

(1) the presumed father and the mother of the child did not live together or engage in sexual intercourse with each other during the probable time of conception; or

(2) the presumed father was precluded from commencing a proceeding to adjudicate the parentage of the child before the expiration of the time prescribed by Subsection (a) because of the mistaken belief that he was the child's biological father based on misrepresentation that led him to that conclusion.

Tex. Fam. Code § 160.607(b).

When a party to a proceeding to determine parentage makes a request, the trial court shall order genetic testing of the child and other designated individuals, "[e]xcept as otherwise provided by this subchapter and Subchapter G." Tex. Fam. Code § 160.502. Consequently, a party must be entitled to maintain a proceeding to adjudicate parentage as set out in Subchapter G before a trial court can order genetic testing to determine parentage. *See* Tex. Fam. Code §§ 160.502(a), 160.607. "A trial court cannot grant an order for genetic testing when requested by an individual who has not made a *prima facie* showing that he is entitled to bring a proceeding to adjudicate parentage or disprove the father-child relationship." *In re Rodriguez*, 248 S.W.3d 444, 451 (Tex. App.—Dallas 2008, no pet.) (citing Tex. Fam. Code §§ 160.502(a), 160.607; *Amanda v. Montgomery*, 877 S.W.2d 482, 486-87 (Tex. App.—Houston [1st Dist.] 1994 orig. proceeding) (granting mandamus relief from an order for genetic testing request by a presumed father who had failed to make a *prima facie* showing that his bill of review challenging paternity was not barred as a matter of law)). Since the limitation on proceedings to adjudicate parentage for a child with a presumed father is contained in Subchapter G "Proceeding to Adjudicate Parentage," a court cannot order genetic testing if the proceeding to adjudicate parentage is barred as a matter of law by the four-year limitations period and the party requesting the testing produces no

10

evidence of the exceptions found in section 160.607(b).  Tex. Fam. Code §§ 160.502(a), 160.601—637 ("Subchapter G").

The party seeking to avoid limitations bears the burden of proving a provision that would toll the statute of limitations.  *See In re Rodriguez*, 248 S.W.3d at 450 (citing *In re S.C.L.*, 175 S.W.3d at 558 n. 1); *see also Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 (Tex. 1988) (party seeking to avoid a statute of limitations bears the burden of proving a tolling provision once the initial bar is established as a matter of law).

" 'A trial court abuses its discretion when a child's paternity has been legally established, and it orders genetic testing before a parentage determination has been set aside.' " *See In re Rodriguez*, 248 S.W.3d at 451 (citing *In re Attorney General*, 195 S.W.3d 264, 269 (Tex. App.—San Antonio 2006, orig. proceeding) (concluding trial judge abused his discretion in ordering genetic testing "in the face of a legally established parent-child relationship" when father did not introduce evidence to overcome his legal status as father) (citing *Amanda*, 877 S.W.2dat 487)).

## 2.    Order for genetic testing

It is undisputed that during the first two years of Lorenzo's life Nestor continuously resided in the household in which Lorenzo resided and Nestor represented to others that Lorenzo was his child.  Thus, Nestor is the presumed father of Lorenzo.  *See* Tex. Fam. Code § 160.204(a)(5).  Any proceeding to adjudicate parentage in this case is subject to the four-year time limitation set forth in section 160.607 of the Texas Family Code.  Lorenzo was over four years old when this suit commenced.  On this record, Rebekah is barred from bringing a proceeding to adjudicate the parentage of Lorenzo unless she has met her burden to

11

prove an exception to the four-year period of limitations in section 160.607. *See* Tex. Fam. Code § 160.607(a), (b).

To disprove the father-child relationship under section 160.607(b), Rebekah must prove that she and Nestor did not live together or engage in sexual intercourse with each other during the probable time of conception. *See* Tex. Fam. Code § 160.607(b). Both in the trial court and in this proceeding, Rebekah does not address her burden under section 160.607(b).

The establishment of paternity is a matter of legislative policy. *See Michael H. v. Gerald D.*, 491 U.S. 110, 129–30 (1989); *In re S.C.L.*, 175 S.W.3d at 558. The Texas Legislature, in passing section 160.607, determined the policy in this State is to generally limit challenges to legally established paternity to four years after the birth of the child, other than the specifically identified exception. *See* Tex. Fam. Code § 160.607.

The trial court record reveals Rebekah presented no evidence to support either exception in section 160.607(b). In fact, the record shows she presented no evidence at all. Although Nestor argued Rebekah was required to present evidence to meet her burden and demonstrate she was not barred from proceeding, the trial judge ordered testing.

A trial court has no discretion in determining what the law is, nor does it have discretion in applying the law to the facts. *See Walker*, 827 S.W.2d at 840. The legislature has determined that absent certain exceptions, a four-year statute of limitations does apply in cases such as the one before us.

It is clear the trial judge abused her discretion by incorrectly placing the burden on Nestor to show that Lorenzo should not be tested. The clear language of the applicable section of the Texas Family Code, section 160.607, places the

12

burden on Rebekah to present evidence of an exception to the four-year limitation in a proceeding to determine parentage. *See* Tex. Fam. Code § 160.607(b). During the bench trial, Rebekah testified she did not live with Nestor from January 2010 until late-July 2010. During this time, Rebekah had sexual relations in Arkansas with Jerry. When Nestor picked up Rebekah at the bus stop in Texas in late July 2010, Rebekah and Nestor had sexual relations. Rebekah found out she was pregnant at the end of August 2010. Lorenzo was born late March 2011. There is no evidence in the record as to whether or not Lorenzo was a "full term" baby to even make an educated guess as to the time of conception. No one asked the trial judge to take judicial notice of the probable time of conception (if the trial judge could even do so). The fact that prior testing revealed Nestor is not the biological father of Lorenzo does not establish that Nestor and Rebekah did not have sex within the "probable time of conception." Without any evidence, it is an abuse of discretion for the trial judge to conclude that the exception to the four-year statute of limitations applies. *See In re J.C.*, 346 S.W.3d 189, 193 (Tex. App.—Houston [14th Dist.] 2011, no pet.) ("The trial court does not abuse its discretion so long as the record contains some evidence of substantive and probative character to support its decision."); *cf. Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991) ("Whether there was no evidence to support the turnover award would, of course, be a relevant consideration in determining if the trial court abused its discretionary authority in issuing the order.").

Nestor's second issue is granted.

## C.    Remaining issue

In his first issue, Nestor contends the trial court abused its discretion in ordering that Nestor had no right to possession or access to Lorenzo because he was not Lorenzo's father, which Nestor claims involuntarily terminated Nestor's

parent-child relationship without clear and convincing evidence that Nestor had violated section 161.001(b)(1)(A)-(T) of the Texas Family Code.

Having found the trial court erred, resolution of this issue does not afford Nestor greater relief. Therefore, we do not address this issue.

### III. Conclusion

The judgment of the trial court is reversed. This case is remanded for proceedings consistent with this opinion.

/s/     Margaret "Meg" Poissant
            Justice

Panel consists of Justices Christopher, Hassan, and Poissant.