Appellant=s Motion for Rehearing Overruled, Opinion of June 18, 2009
Withdrawn, Affirmed and Substitute Memorandum Opinion filed July 30, 2009








 

Appellant=s Motion for Rehearing Overruled, Opinion of June 18, 2009 Withdrawn, Affirmed and
Substitute Memorandum Opinion filed July 30, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00851-CV

____________

 

IN THE INTEREST OF X.C.B. AKA X.C.,
I.C.B. AKA I.C., S.B.C., AND J.W.C. AKA J.W.W.

 

 



 

On Appeal from the 315th
District Court

Harris County, Texas

Trial Court Cause No. 2007-03224J

 



 

S U B S T I T U T E   M E M O R A N D U M   O P I N I O N

Appellant=s Motion for Rehearing is overruled, our
memorandum opinion of June 18, 2009 is withdrawn, and the following substitute
memorandum opinion is issued in its place.








After a bench trial, the trial court terminated the
parental rights of the surviving birth parents of X.C.B., I.C.B., S.B.C., and
J.W.C.  The court further denied the requested relief of the intervenor, Chris
Brown, and determined that the Texas Department of Family and Protective
Services (ADFPS@) would be the children=s sole managing
conservator.  In four issues, Brown argues the trial court erred in (1)
removing the children from his home, ordering genetic testing, and finding that
he was not their father, (2) appointing DFPS as sole managing conservator, and
(3) incorporating all prior interlocutory orders into the final order. We
affirm.

I.  Factual and Procedural Background

X.C.B. was born to Sherrie Chatman in December 2002; I.C.B.
was born in August 2004.  When S.B.C. was born in February 2006, Chatman and
the baby tested positive for cocaine.  At that time, the children remained with
their mother who was sent to drug rehabilitation.  Monnette Young, a caseworker
for DFPS, testified that it is the agency=s policy to permit
mothers whose children test positive for the first time to take their babies
with them during rehabilitation to facilitate bonding between mother and
child.  On March 24, 2007, Chatman gave birth to J.W.C. who also tested
positive for cocaine.  At that time all four children were placed under the
care of DFPS.  J.W.C. was immediately placed in foster care, but the three
older children were permitted to live with Brown who had maintained an Aon-again,
off-again@ relationship with Chatman.  

On April 5, 2007, DFPS filed an original petition for
protection of the children, for conservatorship, and for termination of the
parents= rights.  In the
petition, DFPS alleged that Brown considered himself to be the father of the
three oldest children, but requested genetic testing to determine paternity. 
The petition further sought to terminate the rights of Floyd Walker, alleged to
be the father of J.W.C., and Sherrie Chatman, the children=s mother.  On
April 25, 2007, the trial court ordered Brown to submit to genetic testing to
determine if he was the father of the three oldest children.  On the same day,
the court appointed DFPS as the temporary managing conservator of the
children.  The children were permitted, however, to live with Brown in his home
subject to certain restrictions including that he permit the children to visit
their mother only when supervised by DFPS.








On September 12, 2007, the three oldest children were
removed from Brown=s home by DFPS because the children
witnessed their aunt stab their mother.  Brown testified that he took the
children to visit their mother=s sister.  According to Brown, while at
their aunt=s home, the children=s mother arrived
and immediately began arguing with her sister.  The aunt stabbed the children=s mother during
the argument.  Brown testified that the children did not see their mother being
stabbed and that he removed the children from the house as soon as the mother
arrived.  However, X.C.B. told a caseworker that he saw his mother and aunt
arguing and that Athere was a lot of blood.@  The children=s great, great
grandmother, Francis Chatman, testified that on the night of the stabbing Brown
took the children along with their mother to the aunt=s home.  This was
in direct violation of the court=s order that the
children only see their mother under the supervision of DFPS. 

On April 3, 2008, Chatman was found deceased.  The record
is unclear as to the cause of her death.  On June 16, 2008, Brown was dismissed
from the conservatorship suit because genetic testing excluded him as the
father of any of the children.  On July 9, 2008, Brown filed a petition in
intervention seeking to be appointed sole managing conservator of the three
oldest children.  After a bench trial, the trial court terminated the rights of
Floyd Walker and the unknown father of the three oldest children.  The court
further found that Brown could not provide a safe, stable, and nonviolent
environment for the children, denied the relief he sought in intervention, and
appointed DFPS the sole managing conservator of the children.

II.  Determination of Paternity

In his first issue, Brown argues that the trial court erred
in permitting DFPS to remove the children from his home when J.W.C. tested
positive for cocaine.  Brown further argues that the trial court lacked
subject-matter jurisdiction because DFPS lacked standing to challenge his
paternity.  








At the time J.W.C. tested positive for cocaine, DFPS took
temporary conservatorship of the children.  The order issued by the court was
interlocutory and has now been superseded by the court=s final judgment. 
An order addressing temporary conservatorship of children is interlocutory, and
this court lacks subject-matter jurisdiction over an appeal from such an
order.  In the Interest of N.J.G., 980 S.W.2d 764, 767 (Tex. App.CSan Antonio 1998,
no pet.).  Thus, to the extent Brown attempts to challenge the trial court=s interlocutory
order, we have no jurisdiction and overrule his issue.

Further, Brown challenges the trial court=s order of genetic
testing.  A proceeding to adjudicate parentage is governed by the Uniform
Parentage Act.  See Tex. Fam. Code Ann. '' 160.001B160.707 (Vernon
2008).  Section 160.601 specifically authorizes the DFPS to bring suit to
adjudicate the parentage of a child.  Tex. Fam. Code Ann. ' 160.601.  Once genetic testing is
conducted and the results released for use in a proceeding to determine
parentage, any resulting harm cannot be undone.  In re Attorney Gen. of
Tex., 272 S.W.3d 773, 777 (Tex. App.CDallas 2008, orig.
proc.) (holding there is no adequate remedy at law for the harm respecting
erroneously ordered genetic testing, and mandamus relief is appropriate). 
Therefore, once Brown submitted to genetic testing, his complaint that the 
order for testing was erroneous became moot.  Brown=s first issue is
overruled.

III.  Managing Conservatorship

In his second issue, Brown contends that the trial court
erred in appointing DFPS the sole managing conservator of the children contrary
to the parental presumption.  

A. 
Standard of Review








Actions to determine conservatorship of children are
governed by the best interests of the children.  See Tex. Fam. Code Ann. ' 153.002.  The
burden of proof in conservatorship cases, as opposed to termination cases, is a
preponderance of the evidence.  See Tex. Fam. Code Ann. ' 105.005; In re
J.A.J., 243 S.W.3d 611, 616B17 (Tex. 2007).  In determining the best
interests of the children, the trial court has wide latitude, and on review we
ask only whether the court acted arbitrarily, unreasonably, or without
reference to any guiding principles.  See Coleman v. Coleman, 109 S.W.3d
108, 110 (Tex. App.CAustin 2003, no pet.).  The trial court
does not abuse its discretion as to factual matters as long as some evidence of
a substantive and probative character exists to support the decision.  In re
M.N.G., 147 S.W.3d 521, 530 (Tex. App.CFort Worth 2004,
pet. denied).  Legal and factual sufficiency are not independent grounds for
review in conservatorship cases, but are relevant factors in deciding whether
the trial court abused its discretion.  In re W.M., 172 S.W.3d 718, 725
(Tex. App.CFort Worth 2005, no pet.). 

Brown primarily argues that as the sole surviving parent he
is entitled to sole managing conservatorship of the children.  Brown relies on
the parental presumption found in section 153.131 of the Texas Family Code,
which provides that unless the court finds that appointment of the parent would
not be in the best interest of the child because the appointment would
significantly impair the child=s physical health or emotional
development, a parent shall be appointed sole managing conservator.  Tex. Fam.
Code Ann. ' 153.131.  Brown
admits that genetic testing proved he is not the biological father of the
children, but argues, by virtue of his common-law marriage to the children=s mother, that  he
should be considered their parent.








Brown first argues that he considered himself to be the
common-law husband of the children=s mother, which
entitles him to a presumption of paternity under section 160.204 of the Family
Code.  Section 160.204(1) provides that a man is presumed to be the father of a
child if he is married to the mother of the child and the child is born during
the marriage.  However, the presumption of paternity can be rebutted by genetic
testing excluding the husband as the father of the children.  Tex. Fam. Code
Ann. ' 160.631.  Because
the genetic tests excluded Brown as the father, and Brown has failed to produce
other genetic testing showing him to be the father, the presumption under
section 160.204 has been rebutted.  Therefore, Brown does not benefit from the
parental presumption.

We now turn to whether the trial court abused its
discretion in appointing DFPS as sole managing conservator.  A court=s primary
consideration in any conservatorship case shall always be the best interests of
the children.  In re V.L.K., 24 S.W.3d 338, 342 (Tex. 2000).  Courts may
use the following nonexhaustive list of factors to determine the children=s best interest:
(1) the desires of the children; (2) the emotional and physical needs of the
children now and in the future; (3) the emotional and physical danger to the
children now and in the future; (4) the parental abilities of the individual
seeking custody; (5) the programs available to assist the individual to promote
the best interest of the children; (6) the plans for the children by these
individuals or by the agency seeking custody; (7) the stability of the home or
proposed placement; (8) the acts or omissions of the parent, or potential
conservator, that may indicate that the existing relationship is not a proper
one; and (9) any excuse for the acts or omissions of the potential
conservator.  Holley v. Adams, 544 S.W.2d 367, 371B72 (Tex. 1976).








Turning to those factors that are present in this case, we
note that the two oldest children were six and four years old at the time of
trial.  Although they were not asked specifically with whom they wanted to
live, there was undisputed testimony that they bonded with Brown and treated
him as their father.  With regard to the emotional and physical needs of the
children and the potential emotional and physical danger to the children, the
primary concern of DFPS and the trial court was that Brown placed the children
at risk by taking them to the home of their aunt.  There was conflicting
evidence as to whether Brown put the children in contact with their mother or
whether the mother arrived later.  Even assuming Brown did not put the children
in contact with their mother, he admitted he took the children to the aunt=s house who showed
a propensity for violence in that she stabbed her sister while the children
were in the house.  The evidence further showed that while he was living with
the children and their mother in 2005, Brown was convicted of assaulting the
children=s mother.  Further,
at the time of trial, Brown was on community supervision probation for
possession of marijuana.

The evidence further showed that Brown owns a trucking
business and earns a living by driving a truck, which required him to leave the
children with a full-time babysitter for days at a time.  Brown testified that
when he learned that the court would not look favorably on his long absences he
hired drivers so he would not be away from home as often.  The evidence also
showed that Brown once took the two older boys on a driving trip in his truck. 
At the time Brown took the boys, DFPS was the managing conservator and Brown
failed to ask DFPS permission to remove the boys from the state.

Brown=s assault and possession convictions
should be weighed when considering acts or omissions of the potential
conservator that indicate the existing relationship is not a proper one.  As to
Brown=s parenting
abilities, he testified that he has four biological children:  a 30-year-old
son, a 26-year-old son, a 24-year-old daughter, and an 18-year-old daughter. 
The youngest daughter lives in his home.  The oldest son is currently serving a
15-year sentence for burglary of a habitation, and the 26-year-old son has
several convictions dating back to 1999, including a conviction for sexual
assault.  The younger son, who occasionally stays overnight in Brown=s home, was
recently released from prison where he was serving a sentence for robbery. 
With regard to the programs available to help Brown, he testified that he
completed a parenting class ordered by the court.

Monnette Young, the DFPS caseworker, testified that the two
older boys are currently living together in a foster home and the girl is
living in another home.  Although X.C.B. is demonstrating aggressive, violent
tendencies, he seems to be adjusting and is receiving counseling.  The children=s foster
placements meet their physical and emotional needs and are in the best
interests of the children.  DFPS is attempting to place the children with a
family member, if possible.  








It is the public policy of this State to resolve
conservatorship disputes in a manner that provides a safe, stable, and
nonviolent environment for the child.  In re C.A.M.M., 243 S.W.3d 211,
216 (Tex. App.CHouston [14th Dist.] 2007, pet. denied).  Reviewing
the evidence in light of the Holley factors, we find the record supports
the trial court=s determination that Brown would not
provide a safe, stable, and nonviolent environment for the children.  Because
the trial court did not abuse its discretion in denying the relief sought in
intervention, we overrule Brown=s second issue.

In his third issue, Brown argues that the trial court
violated the United States and Texas Constitutions by permitting DFPS to direct
the children=s moral and religious training.  Section 151.001 lists
among the rights and duties of a parent the right to direct the moral and
religious training of the child.  Tex. Fam. Code Ann. ' 151.001.  Brown now argues, for the first
time on appeal, that by giving a state agency that right, the trial court has
violated the First and Fourteenth Amendments to the United States Constitution
and article I, section 6 of the Texas Constitution.  Brown did not raise the
constitutional issue in the trial court, his statement of points on appeal, or
in his motion for new trial.  To preserve his complaint for appellate review,
Brown must have presented to the trial court a timely request, objection, or
motion that states the specific grounds for the desired ruling.  See
Tex. R. App. P. 33.1.  Even a
constitutional challenge can be waived if not properly raised in the trial
court.  In re Doe 2, 19 S.W.3d 278, 284 (Tex. 2000).  Therefore, we
overrule his third issue.

In his fourth issue, Brown argues that the trial court
erred in entering a final order that incorporates all prior interlocutory
orders because those orders conflict with the terms of the final order.  Brown
complains that the court issued temporary orders that described his compliance
with a service plan and that those orders conflict with the final order.  By
failing to raise this issue in his statement of appellate points, Brown has
waived any error.








Section 263.405 of the Texas Family Code requires a party
who intends to appeal an order in a suit affecting the parent-child
relationship to file a statement of points on which the party intends to
appeal.  Tex. Fam. Code Ann. ' 263.405(b)(2)
(Vernon Supp. 2008).  Section 263.405(i) provides that an appellate court may
not consider any issue that was not specifically presented to the trial court
in a timely filed statement of the points on which the party intends to appeal
or in a statement combined with a motion for new trial. 

In this case, Brown filed a statement of appellate points
and included a point in which he alleged, AThe order fails to
properly incorporate >any and all previous interlocutory orders.=@ On appeal, he
complains that the trial court erred in entering a final order that
incorporates all prior orders.  Not only did Brown fail to raise this issue in
his statement of appellate points, he raised the opposite issue.  Section
263.405 was enacted to ensure that the trial court may correct any Amistakes that
could have been quickly and easily corrected@ and thus
eliminate the need for appeal.  In re S.K.A., 236 S.W.3d 875, 888 (Tex.
App.CTexarkana 2007),
pet. denied, 260 S.W.3d 463 (Tex. 2008), citing House Comm. on Juv.
Just. & Fam. Issues, Bill Analysis, Tex. H.B. 409, 79th Leg., R.S. (2005). 
Brown did not complain in his statement of appellate points that the trial
court erred in incorporating the temporary orders into the final order. 
Because Brown failed to raise this issue in his statement of appellate points,
his fourth issue is waived.

The judgment of the trial court is affirmed.

 

/s/      John S. Anderson

Justice

 

 

 

Panel consists of
Justices Anderson, Guzman, and Boyce.