**Reversed and Rendered in Part, Affirmed in Part and Memorandum Opinion filed October 10, 2024.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-24-00276-CV

---

### D.M.K. AND S.M., Appellants

### V.

### DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES AND J.S. AND B.S., Appellees

---

**On Appeal from the 315th District Court
Harris County, Texas
Trial Court Cause No. 2020-01130J**

---

## MEMORANDUM OPINION

This accelerated appeal arises from a final order in which, after a final hearing tried to the bench, the trial court terminated the parental rights of appellant D.M.K. (Mother) with respect to her son, Sam,[1] and appointed intervenors J.S. and B.S. (Foster Parents) to be Sam's sole managing conservators. *See* Tex. Fam. Code

---

[1] To protect the minor's identity, we do not use the actual names of the child, parents, or other family members. *See* Tex. R. App. P. 9.8.

Ann. § 109.002(a-1) (accelerated appeals in parental-termination cases); Tex. R. App. P. 28.4 (same).[2]

In three issues, Mother argues: (1) the trial court "abused its discretion by remaining in trial for 2 years, 8 months, and 13 days"; (2) the evidence was legally and factually insufficient to support termination under Family Code section 161.001(b)(1)(E); and (3) the trial court erred by naming Foster Parents as the sole managing conservators instead of S.M.—Sam's maternal grandmother (Grandmother). Mother does not challenge termination of her parental rights pursuant to subsection (N) and (O),

In two issues, Grandmother—who filed a separate notice of appeal from Mother—argues that (1) the trial court erred by naming Foster Parents as the sole managing conservators instead of Grandmother; and (2) Foster Parents failed to provide disclosures in the proceedings below.

The State agrees with Mother that the evidence does not support terminating her parental rights under subsection (E), therefore we reverse the order of the trial court in part, and render the judgment the trial court should have rendered, striking the conclusion that the evidence was sufficient to support termination under subsection (E). We affirm the remainder of the order as challenged on appeal.

## I.    BACKGROUND

In July 2020, appellee Department of Family and Protective Services (the Department) filed its first amended petition, requesting the termination of Mother's and Father's parental rights as to Sam, who was approximately two years old at the time.

---

[2] The trial court also terminated the parental rights of Sam's father, J.T.M (Father). He filed an acknowledgment of paternity, but he has not appealed the termination of his parental rights.

2

A bench trial commenced on July 14, 2021. In August 2021, Grandmother filed a motion to intervene, requesting sole managing conservatorship or, alternatively, possessory conservatorship or grandparent access to Sam. The trial court granted Grandmother's motion to intervene. Over the next two years, Sam was placed with an initial foster family, then Foster Parents, and then a third foster family. On April 12, 2023, the trial court ordered that Sam be placed with Grandmother and that Grandmother not permit Mother to contact Sam. Several days later, Foster Parents filed a motion to intervene, seeking to adopt Sam; the trial court granted their motion to intervene.

On March 27, 2024, the trial court signed its final order of termination, making the predicate findings to terminate Mother's parental rights to Sam pursuant to subsections (E), (N), and (O), and finding that termination of Mother's parental rights was in Sam's best interest. *See* Tex. Fam. Code Ann. §§161.001(b)(1)(E), (N), and (O). The trial court appointed Foster Parents as Sam's sole managing conservators and ordered that Grandmother have "Grandparent Access" with Sam. Mother and Grandmother filed timely notices of appeal.

## II.   ANALYSIS

### A.   Length of the trial

In her first issue, Mother argues that the trial court "lost subject matter jurisdiction by remaining in trial for two years, eight months, and 13 days contrary to the intent of Texas Family Code Section 263.401." In termination cases, a trial must commence by the first Monday following the one-year anniversary of the court first awarding the Department conservatorship of the child:

> Unless the court has commenced the trial on the merits or granted an extension under Subsection (b) or (b-1), on the first Monday after the

3

first anniversary of the date the court rendered a temporary order appointing the department as temporary managing conservator, the court's jurisdiction over the suit affecting the parent-child relationship filed by the department that requests termination of the parent-child relationship or requests that the department be named conservator of the child is terminated and the suit is automatically dismissed without a court order. Not later than the 60th day before the day the suit is automatically dismissed, the court shall notify all parties to the suit of the automatic dismissal date.

Tex. Fam. Code Ann. § 263.401(a). A trial court's failure to timely commence the suit results in the trial court losing subject-matter jurisdiction, unless the court grants a timely extension. *Id.* § 263.401(b). Thus, section 263.401 only requires that trial on the merits begin by a certain date; it imposes no specific deadline by which a final order must be rendered.[3]

Mother admits that the trial court timely commenced trial in accordance with § 263.401, but she complains that the length of the trial below violated the intent of the statute. However, the plain language of the statute places no limit on the length of trial, just as long as it *commences* in a timely fashion. *Id.* Additionally, we note that Mother never complained below about the length of the trial or otherwise request that the proceedings be expedited. *See* Tex. R. App. P. 33.1(a) (preservation of appellate complaints).

We overrule Mother's first issue.

---

[3] In 2021, the legislature enacted section 263.4011, which provides that "the court shall render a final order not later than the 90th day after the date the trial commences." Tex. Fam. Code Ann. § 263.4011. However, its effective date was September 1, 2021, and it only applies to suits filed by the Department "on or after the effective date." Act of Apr. 28, 2021, 87th Leg., R.S., ch. 8, §§ 10, 15, 16, 2021 Tex. Gen. Laws 10, 15, 18. Because the Department filed its suit in the present case in 2020, section 263.4011 is not applicable to the present case, and thus there was no applicable requirement at the time to render a final order within 90 days of commencing trial.

## B.      Predicate termination grounds

In her second issue, Mother argues that the evidence was legally- and factually-insufficient to support termination under subsection (E) of section 161.001(b)(1). Tex. Fam. Code Ann. § 161.001(b)(1)(E). Mother does not, however, challenge her termination under (N) and (O), but the Department agrees with Mother that termination under subsection (E) was improper. Tex. Fam. Code Ann. § 161.001(b)(1)(N), (O), (E).

Accordingly, we sustain Mother's second issue.

## C.      Conservatorship determination

In her third issue, Mother challenges the trial court's conservatorship determination. However, as noted above, Mother did not challenge every ground supporting the trial court's order terminating her parental rights. "[A]n order terminating the parent-child relationship divests the parent and the child of all legal rights and duties with respect to each other, except that the child retains the right to inherit from and through the parent unless the court otherwise provides." Tex. Fam. Code Ann. § 161.206(b). Therefore, Mother has no legal interest in Sam and lacks standing to challenge the conservatorship determination. *See In re H.M.M.*, 230 S.W.3d 204, 205 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (concluding that parent lacked standing on appeal to challenge the trial court's conservatorship determination of child because parent did not contest termination of her parental rights).

We overrule Mother's third issue.

## D.      Participation of foster parents in the termination proceedings

In Grandmother's first issue on appeal, she argues the trial court abused its discretion by allowing Foster Parents to participate in the termination proceedings

because: (1) no petition for intervention was filed following the granting of the approval of the motion for leave to file petition; (2) counsel for Foster Parents waived participation in the termination portion of the trial; (3) Foster Parents failed to file timely disclosures; and (4) Foster Parents had no request for affirmative relief on file.

Regarding Grandmother's first contention, the record clearly demonstrates that Foster Parents filed a petition for intervention, followed by a motion for leave to file petition several days later. Nevertheless, Grandmother implies that Foster Parents were required to re-file their petition for intervention after the trial court granted their motion for leave to file a petition.[4] Grandmother cites no law to support this proposition. *See* Tex. R. App. P. 38.1(i) (appellant's brief must contain appropriate citations to authorities). Therefore, we find Grandmother's argument to be without merit.

Concerning her second contention, it is true that counsel for Foster Parents stated in their original appearance that "we're not going to participate in the termination part because we're here for the adoption proceedings; so I would just waive our participation for the termination portion." However, once Foster Parents began asking questions and participating at trial, no objections were made by any party. Because this issue was never brought to the trial court's attention, it has not been preserved for appellate review. Tex. R. App. P. 33.1(a).

In her third challenge to the Foster Parents' participation at trial, Grandmother asserts that the Foster Parents failed to file timely disclosures. However, none of the exhibits offered—nor the witnesses called—by Foster

---

[4] Additionally, we note that Grandmother did the same thing as the Foster Parents: she filed her original petition for intervention before the trial court had actually granted her motion for leave to file a petition.

Parents were objected to on the basis of lack of disclosure. Because Grandmother never brought this complaint to the trial court's attention, this issue has not been preserved for appellate review. Tex. R. App. P. 33.1(a).

In Grandmother's fourth contention, she claims that Foster Parents did not file for affirmative relief. However, Foster Parents' petition for intervention specifically requested that they be appointed as sole managing conservators. The record does not support Grandmother's argument.

Accordingly, we conclude the trial court did not abuse its discretion in allowing Foster Parents to participate in the proceedings below. We overrule Grandmother's first issue.

## E.    The trial court's conservatorship determination

In Grandmother's second issue, she argues that the trial court abused its discretion in naming Foster Parents as the sole managing conservators of Sam More specifically, Grandmother contends that it was in Sam's best interest to be placed with her, a preferential relative, over a nonrelative foster family.

### 1.    Standard of review and applicable law

"The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship[.]" Tex. Fam. Code Ann. § 153.002. However, termination of parental rights and appointment of a nonparent as sole managing conservator are two distinct issues, differing in elements, standards of proof, and standards of review. *Compare* Tex. Fam. Code. Ann. § 161.001 *with* Tex. Fam. Code Ann. § 153.131(a); *see also In re J.A.J.*, 243 S.W.3d 611, 615–17 (Tex. 2007).

Unlike the clear-and-convincing standard necessary to support termination of parental rights, the facts necessary to appoint a nonparent as sole managing

7

conservator need only be established by a mere preponderance of the evidence. *See* Tex. Fam. Code Ann. § 105.005; *J.A.J.*, 243 S.W.3d at 616. Likewise, the standard of review for the appointment of a nonparent as sole managing conservator is only for an abuse of discretion, which is less stringent than the standard of review for termination of parental rights. *J.A.J.*, 243 S.W.3d at 616. Therefore, the trial court's appointment of a nonparent as sole managing conservator is reversed only if we determine the appointment is arbitrary or unreasonable. *Id.*

> In determining whether the trial court abused its discretion,
>
> we apply a hybrid abuse-of-discretion analysis to determine whether the trial court (1) had sufficient information on which to exercise its discretion, and (2) erred in its application of discretion. Thus, legal and factual insufficiency are not independent grounds for reversal, but instead are factors to be considered in determining whether the trial court abused its discretion.

*In re C.A.M.M.*, 243 S.W.3d 211, 220 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (internal citations omitted).

To determine if the evidence is legally sufficient, we review the entire record, considering evidence favorable to the finding if a reasonable fact-finder could, and disregarding evidence contrary to the finding unless a reasonable fact-finder could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 828 (Tex. 2005). The evidence is factually insufficient if the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 773 (Tex. 2003).

Finally, after assessing the sufficiency of the evidence, we determine whether, based on the elicited evidence, the trial court made a reasonable decision. *C.A.M.M.*, 243 S.W.3d at 221.

## 2. Application

Grandmother asserts that the trial court erred by placing Sam with Foster Parents because it was in Sam's best interest to be placed with her, "an available preferential relative." It is true that relatives are generally preferred over nonrelatives as potential placement options, but that preference is not absolute:

> [i]f the court does not order possession of a child by a parent, managing conservator, possessory conservator, guardian, caretaker, or custodian . . . the court shall place the child with a relative of the child *unless the court finds that the placement with a relative is not in the best interest of the child*.

Tex. Fam. Code Ann. § 262.201 (emphasis added). In this case, the trial court specifically determined that it was in the best interests of Sam to appoint Foster Parents, not Grandmother, as the sole managing conservators.

In determining the best interest of a child, a court may consider, among other things: (1) the child's desires; (2) the child's emotional and physical needs now and in the future; (3) any emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking primary possession; (5) the programs available to assist these individuals to promote the child's best interest; (6) the plans for the child by those seeking primary possession; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams,* 544 S.W.2d 367, 371–72 (Tex. 1976).

*Evidence in support of trial court's determination*

When Grandmother was being initially investigated as a potential placement option for Sam, Grandmother contacted the Department to inform them that she could not take care of Sam due to health issues. Thus, there were concerns about

her ability to provide long-term care for Sam given Grandmother's deteriorating health.

The Department was also concerned because Grandmother admitted that if she were granted custody of Sam, she wanted Mother to help her take care of Sam, despite Sam being removed from Mother's care in the first place because Mother and her boyfriend repeatedly exposed Sam to drug abuse, physical violence, and domestic abuse. Similarly, Grandmother gave Sam to Mother's boyfriend during the investigation phase despite the allegations of domestic violence and substance abuse by the boyfriend, and thus there were concerns that giving Grandmother sole managing conservatorship would expose Sam to more domestic violence and abuse.

There was also evidence that offered points of contrast between Grandmother's and Foster Parents' home environments. Mother alleged that Grandmother was abusive and overused prescriptions pills and alcohol, although she later recanted those allegations. Meanwhile, the Department had no concerns with placing Sam with Foster Parents and noted that Sam bonded with them and Foster Parents' own children. Foster Parents took Sam to doctor's appointments and therapy, and on a family camping trip. Sam referred to Foster Parents as "Mom and Dad," and Sam was always sad when he had to leave Foster Parents' house.

There was also testimony from caseworkers and therapists concerning the best interests of Sam. After Sam was initially placed with Foster Parents, Grandmother received visitation rights with Sam. But after the first visit with Grandmother, Sam's demeanor changed, he became more clingy, and he began having night terrors. Foster Parents took Sam to a play therapist, who ultimately recommended that Sam remain with Foster Parents for stability.

Caseworker Kyle Sanders recommended placement with Foster Parents:

"Based on my interactions with [Sam] and both caregivers and both of their homes, from what I've witnessed and the interactions with [Sam], it appears his emotional stability was a little more stable at the [Foster Parents' home.]"[5] Sanders admitted the Department had no initial concerns placing Sam with Grandmother. However, by the time of the final determination of conservatorship, the Department had developed concerns of "instability, [and] the potential of [Mother] coming back into play." Sanders elaborated that by instability, the Department was mostly referring to conflicts that arose between Grandmother and Sam's therapist because Grandmother believed the therapist was biased against her.

Sanders testified that the Department was further concerned because of Sam's pattern of behavior around Grandmother. In addition to the night terrors, when Sam was around Grandmother, he exhibited increased defiance, paid less attention, and on numerous occasions, Sam would "act like a cat . . . literally acting like an animal, like purring, licking his hands, and batting things like a cat. . . . [and] crawl[ing] on top of the couch like a cat[.]" Sanders found this troubling because this behavior "wasn't able to be stopped[,] and Grandmother did not seem to be troubled by the behavior when confronted about it."

Grandmother filed a motion requesting that the trial court conduct an in-chamber interview with Sam before making its final conservatorship determination. Sam was approximately five years old at this point. The trial court granted the motion and interviewed Sam. Sam's interview with the trial court is not in the record; however, the trial court was able to consider Sam's self-expressed desires in making its determination.

---

[5] Although the Department recommended Sam be permanently placed with Foster Parents during the proceedings below, we note that in its appellate brief, the Department "takes no position on the disputed permanent placement [of Sam.]" The Department alleges it has no position because it already received the primary relief it was seeking: the termination of Mother's rights and the naming of a conservator.

On this record, we cannot conclude that the trial court had factually-insufficient evidence upon which to exercise its discretion or erred in its application of this discretion. To the contrary, the record supports the trial court's determination that naming Foster Parents as the sole managing conservators was in Sam's best interest. Likewise, the evidence is legally sufficient to support the trial court's decision. Accordingly, we overrule Grandmother's second issue.

## III.  CONCLUSION

We reverse the portion of the final order of the trial court with respect to the conclusion that the evidence was sufficient to support termination on the predicate ground of Family Code Section 161.001(b)(1)(E), and we render the judgment the trial court should have rendered, with the result that we strike the conclusion that the evidence was sufficient to support termination under subsection (E).

We affirm the remaining portion of the final order as challenged on appeal.


/s/      Charles A. Spain
         Justice


Panel consists of Justices Spain, Poissant, and Wilson.

12